## THE JOHN SHAY.

### KEATING v. THE JOHN SHAY.

(District Court, E. D. Pennsylvania. May 14, 1897.)

MARITIME LIENS—STEVEDORES IN HOME PORT.

Stevedores loading or unloading a vessel in the home port are not entitled to a lien.

This was a libel in admiralty by Joseph Keating, a stevedore, against the schooner John Shay, to enforce an alleged lien against her. The cause was heard upon the following exceptions to the libel:

"First. Because the allegations thereof do not disclose any admiralty or maritime lien or claim upon the said vessel whereupon an attachment should be founded.

"Second. Because the alleged services were rendered to a domestic vessel in her home port and are not the subject of an admiralty lien.

"Third. Because the said libel was filed by libelant without entering stipulation for costs."

Jos. Hill Brinton, for libelant.

The general trend of authority makes the claim of a stevedore analogous to a seaman's claim for wages even in the home port, and establishes a lien on the vessel therefor.

In The Senator (1876) 21 Fed. 191, Judge Welker held that the services of the stevedore were necessary to the general business of the transportation of the cargo, and contributes to the reward of capital employed in maritime service. That they should be regarded as a maritime service, and the stevedore furnished with a remedy against the vessel.

"I am aware that there are decisions opposed to the right to proceed in rem for this class of service; but they do not seem to be founded on sound principle, and I do not feel it to be my duty to follow them. There does not seem to be any difference in principle between that service and the service performed by the sailor, the lighterman, the man who sets the rigging, who scrapes the bottom or paints the side of the vessel, or by him who furnishes supplies or tows the vessel out or into the port. They are all necessary to the general business of the transportation of the cargo, and contribute to the reward of capital employed in maritime service, and alike should be regarded as maritime service, and furnish a remedy against the vessel."

In Roberts v. The Windermere (1880) 2 Fed. 722, Judge Choate decides that a stevedore's claim for services constitutes a maritime service.

The River Queen (1880) 2 Fed. 731, Judge Choate held that the weighing, inspecting, and measuring of the cargo of a vessel performed partly on land and partly on shipboard constitutes a maritime service for which a lien attaches irrespective of the port of the vessel.

Judge Thayer held in The Wyoming (1888) 36 Fed. 495: "In this district it has been heretofore held that such services [stevedores] are of maritime character, and that a lien exists therefor, even in the home port, when the service is shown to have been rendered on the credit of the vessel, or when such fact is fairly inferable from the circumstances under which the service was rendered."

In The Seguranca (1893) 58 Fed. 908, Judge Brown draws a distinction between a contractor who, pursuant to his general business, furnishes watchmen or stevedores to a vessel in her home port, (as a lien for such services is similar to any other repairs or supplies in the home port), and that of a watchman or stevedore when employed by the ship's representative on her credit, in which case, even in the home port, they may have a lien for their wages in enabling the ship to earn her freight as analogous to the wages of a seaman to pilotage, towage, or wharfage. He therein cites with approval The Trimountain, 5 Ben. 247, Fed. Cas. No. 14,175.

John A. Toomey, for claimant.

The first paragraph of the libel alleges that "the schooner John Shay is, and at the time hereinafter mentioned was, an American vessel hailing from and registered at Philadelphia," so that the question presented is whether a stevedore who discharges a vessel in her home port is entitled to a lien for his services which can be enforced in the admiralty.

Such a lien arises only when the services are rendered to a foreign vessel. The George T. Kemp (June, 1876) 2 Lowell, 483, Fed. Cas. No. 5,341; The E. A. Barnard (June, 1880) 2 Fed. 712; The Windermere (May, 1880) 2 Fed. 722; The Canada (April, 1881) 7 Fed. 119; The Hattie M. Bain (May, 1884) 20 Fed. 389; The Velox (Aug., 1884) 21 Fed. 479; The Director (Feb., 1888) 34 Fed. 57; The Scotia (Aug., 1888) 35 Fed. 916; The Gilbert Knapp (Jan., 1889) 37 Fed. 209; The Main (June, 1892) 2 C. C. A. 569, 51 Fed. 954; Norwegian Steamship Co. v. Washington (June, 1893) 6 C. C. A. 313, 57 Fed. 224.

No well-considered case, in which a stevedore recovered for his services rendered to a vessel in her home port, can be produced which would justify the court in changing the law as laid down by this court in the case of The E. A. Barnard, 2 Fed. 712.

Judge Brown, after deciding in The Hattie M. Bain, The Velox, and The Scotia, supra, that a lien was given to stevedores for services to a foreign vessel, in the case of The Seguranca, 58 Fed. 908, while dismissing the libel, attempts to extend the lien for services to a vessel in her home port, because the services are maritime in their nature. The authorities which he relies on however to sustain his contention are either cases of the distribution of remnants where no owner appeared, as The Trimountain, 5 Ben. 247, Fed. Cas. No. 14,175, the cases of foreign vessels, as The Erinagh, 7 Fed. 231, The Mattie May, 45 Fed. 899, or cases in which it does not appear whether the vessel was foreign or domestic—as The Onore, 6 Ben. 564, Fed. Cas. No. 10,538; The River Queen, 2 Fed. 731, and The Senator, 21 Fed. 191. In the case of The Wyoming, 36 Fed. 493, the libel was dismissed: it does not appear whether the vessel was foreign or domestic, and simply refers to a manuscript decision recognizing the right to a lien for services in the home port.

The contention of Judge Brown that a maritime service in the home port gives rise to a lien which can be enforced in the admiralty, is opposed to the highest authority. In the case of Ex parte Easton, 95 U. S. 69, decided October, 1877, which was a case of wharfage, it is said at page 75: "These remarks are sufficient to show that wharves, piers, or landing places are well-nigh as essential to commerce as ships and vessels, and are abundantly sufficient to demonstrate that the contract, for which, if the vessel or water craft is a foreign one, or belongs to a port of state other than where the wharf is situated, a maritime lien arises against the ship or vessel in favor of the proprietor of the wharf."

Following this decision Judge McKennan in the case of Monongahela Navigation Co. v. The Bob McConnell, which was decided March, 1880, in the Western district of Pennsylvania, and reported in 1 Fed. 218, held that lockage in a public navigable river was a purely maritime service, but that a lien therefor did not arise when the services were rendered to a vessel in her home port.

Within two months after this last decision this court decided the case of The E. A. Barnard, 2 Fed. 712, which practically denied the stevedore a lien at the home port of the vessel. This last case is referred to by Judge Jenkins in the case of the Gilbert Knapp (Jan., 1889) 37 Fed. 209, who charges that this court in deciding The E. A. Barnard failed to refer to The Windermere and The Senator. Of course the court could not refer to either of them, because they had not then been published—and although the case of The Senator had been decided in June, 1876, it did not appear in print until 1884—when it was published in 21 Fed. 191, among the cases purporting to have been decided in August and November, 1884. Even if both these cases had been known to this court it could not have had any effect on the decision in The E. A. Barnard because The Windermere was the case of a foreign vessel and in The Senator it did not appear whether the vessel was foreign or domestic. However Judge Jenkins agrees with this court that no lien is given to a stevedore for services rendered to a vessel in her home port and says at page 214: "It

does not necessarily follow, the contract being maritime that a lien upon the vessel is allowed"—and that the services of a stevedore stand in no such relation to the ship as those of a mariner.

BUTLER, District Judge. The libel and exceptions raise the question, are stevedores employed in the home port of a vessel entitled to a lien? It seems to be settled that they are not. The subject is well discussed and the authorities cited on the one side and the other, in the proctor's brief annexed, and I therefore incorporate it in this opinion. The contract is maritime; but this fact does not control the question. Contracts for supplies and other necessaries, are maritime; but when furnished in the home port no lien attaches. In the absence of express stipulation, liens attach only where the supplies are furnished, or services rendered, on the credit of the vessel. In the home port they are presumed to be furnished or rendered on the credit of the owners. Liens are not favored, and are, therefore, allowed only where the necessities of the vessel and the interests of commerce render them necessary. No case is found in which a lien for stevedores' services in the home port, has been allowed, as the libelant's intelligent proctor, admits. He relies however on expressions found in some cases where the question was not directly involved. The obiter dicta of judges are not of much value; very often they are misleading. The libel must be dismissed.